562 A.2d 618 (1989)
In the Matter of D.M., Appellant.
No. 85-906.
District of Columbia Court of Appeals.
Argued December 2, 1988.
Decided July 13, 1989.
Diane Weinroth, appointed by the court, for appellant.
Peter A. Chapin, Washington, D.C., for appellee.
Before ROGERS, Chief Judge, and NEWMAN and TERRY, Associate Judges.
ROGERS, Chief Judge:
This is an appeal from the dismissal of a petition to establish paternity and the denial of a motion for reconsideration on the ground that the trial court erred in ruling that it did not have jurisdiction to determine paternity independent of a request for child support or other non-hypothetical issue contingent on the establishment of paternity. We affirm.

I
On October 31, 1984, eight days before D.M.'s twenty-first birthday, her mother N.G. filed a petition to adjudicate appellee as D.M.'s father and to "grant such other and further relief as [the court] deems appropriate." Appellee filed a motion to dismiss or, in the alternative, for summary judgment for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. On May 3, 1985, the trial judge granted the motion to dismiss for lack of subject matter jurisdiction and failure to state a justiciable claim. N.G.'s motion for reconsideration was denied on the ground that
an action for a declaration of paternity is not maintainable unless there is a present non-hypothetical controversy *619 over child support or some other question contingent on whether or not the respondent is [D.M.]'s father.

II
Appellant D.M.[1] contends that the Superior Court of the District of Columbia has jurisdiction to determine paternity regardless of whether or not the plaintiff seeks child support. Appellee responds that the Superior Court lacks jurisdiction over non-support paternity actions, citing Harrison v. District of Columbia, 95 A.2d 332 (D.C.1953), and D.C.Code § 16-2342 (1988 Supp.). In Harrison, the court stated:
We find no authority for the Juvenile Court to entertain a proceeding merely to determine the paternity of an illegitimate child. The statute confers jurisdiction on that court of "Proceedings to establish paternity and provide for the support of a child born out of wedlock."
Id. at 333. This decision preceded enactment of the District of Columbia Court Reform and Criminal Procedure Act of 1970[2] (Court Reform Act), which established the Superior Court as a court of general trial jurisdiction "with the power to adjudicate any civil action at law or in equity involving local law." Andrade v. Jackson, 401 A.2d 990, 992 (D.C.1979). See D.C.Code § 11-921 (1981). Consequently, the fact that the court in Harrison could not find a specific grant of jurisdiction to the Juvenile Court of the District of Columbia to adjudicate paternity in the absence of a claim for child support is not dispositive of whether the Family Division of the Superior Court lacks such jurisdiction.
Under the Court Reform Act the Family Division of the Superior Court is vested with jurisdiction over many matters previously within the jurisdiction of the D.C. Juvenile Court. The Act specifically provides, however, that the Family Division has exclusive jurisdiction of both
(3) actions to enforce support of any person as required by law; [and]
(11) proceedings to determine paternity of any child born out of wedlock.
D.C.Code § 11-1101 (1981). Appellee contends, relying on D.C.Code § 16-2342 (1988 Supp.), that actions for support and paternity proceedings are contingent on each other. Section 16-2342 provides:
Proceedings over which the [Family] Division has jurisdiction under D.C.Code, sec. 11-1101(3) and (11) to establish parentage and provide for the support of a child may be instituted after four months of pregnancy or at anytime until the child's twenty-first birthday.
The plain meaning[3] of § 16-2342 does not require that an action under subsection (11) always be paired with an action under subsection (3) in order for the Family Division to have jurisdiction. On the contrary, the purpose of this section, entitled "Time of bringing complaint," is to set a jurisdictional time bar, not to limit subject matter jurisdiction. The legislative history and this court's decisions make clear, however, that this section was designed to "`change the focus [of paternity proceedings] from punishment of the putative father to provision for support of the minor child and children.'" District of Columbia ex rel. W.J.D. v. E.M., 467 A.2d 457, 465 n. 15 (D.C.1983) (quoting SENATE COMM. ON THE DISTRICT OF COLUMBIA, 91ST CONG., 2D SESS. STATEMENT OF THE MANAGERS ON THE PART OF THE SENATE SUBMITTED REGARDING THE CONFERENCE ACTION UPON S. 2601, THE PRESIDENT'S CRIME LEGISLATION FOR THE DISTRICT OF COLUMBIA 14 (Comm. Print 1970)). See also R.N.M. v. A.N., 537 A.2d 579, 581 *620 n. 3 (D.C.1988). Thus, while the narrow purpose of § 16-2342 cannot be transformed into a limitation on the general jurisdictional powers set forth in § 11-1101, the parentage provision in Chapter 11 traditionally has been linked to actions for child support. See, e.g., Lindsay v. District of Columbia, 298 A.2d 211 (D.C.1972).
In Felder v. Allsopp, 391 A.2d 243 (D.C. 1978), the court held that an action to determine parentage is maintainable under the general equitable powers of the Superior Court, see D.C.Code § 11-921(a), rather than § 11-1101 (1973). Id. at 245. Noting that Allsopp had sued to establish his right to visitation, the court characterized the parentage action as being "in essence an equitable domestic relations action, such as an action for custody or divorce." Id. Since an action to establish parentage for the purpose of enabling proper consideration of the right to visitation did not involve custody or divorce, the court concluded that "the sole jurisdictional basis for such an action ... would be the general equity jurisdiction of the trial court." Id.[4]
Similarly, in the instant case, since neither custody, divorce nor child support is sought, we hold that the jurisdictional basis of appellant's action is the general equity jurisdiction of the Superior Court, and that there is no statutory bar to a non-support paternity action. The question remains whether appellant's action is justiciable or "an impermissible one merely to establish parentage." Id. (citing Harrison, supra, 95 A.2d 332).

III
Whether a declaratory judgment is the appropriate vehicle for a determination of paternity will depend on
whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
McIntosh v. Washington, 395 A.2d 744, 755 n. 24 (D.C.1978) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-42, 57 S.Ct. 461, 463-65, 81 L.Ed. 617 (1937)). The trial court's authority to issue a declaratory judgment is limited to deciding justiciable claims. Smith v. Smith, 310 A.2d 229, 231 (D.C.1973) (where "ultimate question depends on contingencies which may not come about that question is not ripe for judicial resolution"). The question, therefore, is whether an action seeking a determination of paternity constitutes, by itself, a justiciable claim or whether it would be an "abstract, hypothetical or contingent question[]" over which the trial court would lack jurisdiction. Pauling v. Eastland, 109 U.S. App.D.C. 342, 344, 288 F.2d 126, 128 (quoting Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725 (1945)), cert. denied, 364 U.S. 900, 81 S.Ct. 233, 5 L.Ed.2d 194 (1960).[5] In Andrade v. Jackson, supra, 401 A.2d at 993, the court noted that the court's decision cannot be made in a vacuum. Cf. Super.Ct.Dom. Rel.R. 405(a) and (b). We hold that a claim seeking an adjudication of paternity, without *621 any indication of the immediacy or reason such a declaration is required, does not present a justiciable claim.
This court and courts in other jurisdictions have recognized that while the primary purpose of paternity proceedings has been to provide financial support for the child, see, e.g., E.R.B. v. J.H.F., supra, 496 A.2d at 611; Kordek v. Wood, 90 A.D.2d 209, 209, 457 N.Y.S.2d 156, 157 (1982); In re R.W.L., 116 Wis.2d 150, 159, 341 N.W.2d 682, 686 (1984), that is not its sole purpose. As stated by the Supreme Court of Washington, "[T]he child has an interest not only in obtaining support, but also in inheritance rights, family bonds, and accurate identification of his or her parents." McDaniels v. Carlson, 108 Wash.2d 299, 738 P.2d 254, 261 (1987). See State v. Santos, 104 Wash.2d 142, 146-49, 702 P.2d 1179, 1182-83 (1985) (en banc). Much as this court did in Felder v. Allsopp, supra, Florida recognized in Kendrick v. Everheart, 390 So.2d 53, 57 (Fla.1980), the right of a putative father to bring a declaratory action in vindication of rights articulated in Stanley v. Illinois, 405 U.S. 645, 652, 92 S.Ct. 1208, 1213, 31 L.Ed.2d 551 (1972). Subsequently, it also recognized a reciprocal right on behalf of an individual, upon reaching majority, to maintain an action for a declaratory judgment to establish his or her paternity even though the child would no longer be eligible to seek support. Rogers v. Runnels, 448 So.2d 530 (Fla.App.1984). Other jurisdictions have also acknowledged that a declaratory judgment is an appropriate method of determining parentage.[6]
Still, declaratory actions are justiciable only where there is a presently articulated need for the declaration. See Kendrick v. Everheart, supra, 390 So.2d at 59 (must be "a bona fide, actual, present practical need for the declaration"). While the traditional paternity action is most often viewed as designed to assure the provision of child support from the natural father, a declaratory judgment adjudicating paternity is designed to establish the status of the child and the rights of all interested parties, as well as to confer the status of legitimacy. Kordek v. Wood, supra, 457 N.Y.S.2d at 157-58. From that status certain concomitant rights are fixed. Id. 457 N.Y.S.2d at 158.
The rights contingent upon the establishment of paternity are not insubstantial. Financial support from the natural father undoubtedly plays a significant role in any consideration of the child's welfare, but support is not the sole concern. This may be especially true, as in the instant case, when the "child" is past the age of majority and the father is no longer obligated to support her under D.C.Code § 16-2342.[7] As an adult, however, she may have her own interests, financial and otherwise, in establishing her paternity.[8] Aside from these potential financial interests, the child *622 may need to know his or her biological heritage for medical purposes. There also is the psychological interest in establishing one's paternity.
All this said, it remains necessary for a claimant seeking a declaration of paternity to allege some reason for the determination of parental status. D.M. alleges that appellee is her biological father; appellee has denied it. That is all that has been presented in this case. From the record it is clear that appellant's request for "such other and further relief as the court deems appropriate" is insufficient to establish a justiciable claim for a declaratory judgment. Appellant has alleged no reason whatever for seeking the determination that appellee is her natural father. She has not even alleged that she seeks emotional well-being, much less entitlement to tangible benefits flowing from parentage. While we do not intend to suggest that the threshold for establishing a justiciable claim to a declaration of paternity is particularly high, some reason must be stated to render the judicial determination more than a mere advisory opinion. Smith v. Smith, supra, 310 A.2d at 231; Kendrick v. Everheart, supra, 390 So.2d at 59. Accordingly, we hold that the Superior Court has jurisdiction to adjudicate paternity where a complaint is filed that pleads a sufficient cause of action, without a claim for support, showing it is not an abstract controversy. Thus, the trial court was correct in dismissing the petition for failure to state a justiciable claim.
Affirmed.
NOTES
[1] This court issued an order to show cause why the appeal should not be dismissed for lack of the real party in interest under Super.Ct.Dom. Rel.R. 17(a) since N.G. had no standing to sue on behalf of D.M., her daughter, who had reached the age of majority, and no longer had an interest in a proceeding simply to adjudicate paternity without seeking support. In response, N.G. moved to add D.M. as a party. We granted leave to substitute the daughter D.M. as the real party in interest. See 7 Wright & Miller, Federal Practice and Procedure, § 1688, at 470-71 (2d ed. 1986).
[2] Pub.L. No. 91-358, 84 Stat. 473.
[3] See E.R.B. v. J.H.F., 496 A.2d 607, 609 (D.C. 1985); Peoples Drug Stores v. District of Columbia, 470 A.2d 751, 753 (D.C.1983) (en banc).
[4] In E.R.B. v. J.H.F., supra, 496 A.2d at 609, the court stated in dictum that § 16-2341(c) "specifically permits an "individual to file a civil action' to establish parentage." In E.R.B., the issue was whether there was a right to a jury trial in a paternity proceeding. In stating that a determination of child support was equitable rather than legal, the court also distinguished a paternity action that did not seek child support, remarking that "it is possible under the present Code to bring a purely non-support paternity action. Such an action would simply adjudicate the status of the respondent as parent." Id. at 612 n. 10.
[5] Super.Ct.Com.Rel.R., 57 provides:

The procedure for obtaining a declaratory judgment pursuant to Title 28 U.S.C. § 2201 or otherwise shall be in accordance with these Rules.... The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.
The Federal Declaratory Judgment Act provides:
In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.
28 U.S.C. § 2201 (1988 Supp.).
[6] See, e.g., Pritz v. Chesnul, 106 Ill.App.3d 969, 973, 436 N.E.2d 631, 635 (1982) (visitation rights and support obligations) (citing Slawek v. Stroh, 62 Wis.2d 295, 305-08, 215 N.W.2d 9, 15-17 (1974)); Anonymous v. Anonymous, 472 So.2d 640, 642 (Ala.Civ.App.1984) (alleged father's estate) (citing Brantley v. Brantley, 251 Ala. 493, 38 So.2d 8 (1948)). See also In re R.W.L., supra, 341 N.W.2d at 686 (child's interest in seeking support separate from mother's or state's); Webb v. First Nat'l. Bank & Trust Co. of Joplin, 602 S.W.2d 780, 782 (Mo.App.1980) (adoption).
[7] The exceptions for adult children who are physically or mentally disabled are not present here. See Nelson v. Nelson, 548 A.2d 109 (D.C. 1988).
[8] These interests may well be future interests which may be much more difficult to adjudicate once the financial claim accrues. See In re Glover, 470 A.2d 743, 751 (D.C.1983) (Ferren, J., concurring) (need not prove paternity before death); D.C.Code § 19-316 (1981) (intestate share to children); Id. § 16-909 (1981, 1988 Supp.). To require an unacknowledged child born out of wedlock to wait until after the putative father's death to present evidence in support of paternity may damage the child's ability to prove paternity and might give rise to an equal protection problem. See In re Glover, supra, 470 A.2d at 750 n. 15 (citing Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977)). These same concerns arise when an individual may be entitled to receive the parent's Social Security disability and survivor's benefits, 42 U.S.C. § 416(h)(3)(A)(i)(II) (1983), serviceman's life insurance proceeds, 38 U.S.C. § 765(9)(c) (1979, 1988 Supp.), a military allowance, 37 U.S.C. § 401(2) (1988), and veteran's benefits, 38 U.S.C. § 101(4)(A) (1979, 1988 Supp.). See Kordek v. Wood, supra, 90 A.D.2d at 210-13, 457 N.Y.S.2d at 158-59.